# DEEMS *v.* WESTERN MARYLAND RAIL-WAY COMPANY, ET AL.

[No. 362, September Term, 1966.]

98

*Decided June 7, 1967.*

*Motion for rehearing filed on June 30, 1967; denied July 12, 1967. Opinion modified.*

The cause was argued before HORNEY, MARBURY, OPPEN-HEIMER, McWILLIAMS and FINAN, JJ.

*James G. Perry,* with whom was *Martin Moncarz* on the brief for appellant.

*Melvin J. Sykes,* with whom were *William C. Purnell, Rowland Posey* and *Paul M. Higinbothom* on the brief for Western Maryland Railway Company, one of appellees; *Clayton W. Daneker,* with whom was *Loring E. Hawes* on the brief for The Pennsylvania Railroad Co., other appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

For the first time in this State, the denial of a wife's right to sue for loss of her husband's consortium due to injuries received by him as the result of the defendant's negligence, is expressly challenged as a violation of the wife's rights under the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution. In recent years, the wife's right of action for loss of consortium has been considered and reconsidered by a number of respected courts throughout the country and the subject has been discussed by many eminent authorities in textbooks and in law review articles. Only a few decisions, however, have passed upon the constitutional question now raised.

The plaintiff-appellant, a married woman, filed suit in her own name, in the Superior Court of Baltimore City, without joinder of her husband as a plaintiff, against the Western Maryland and Pennsylvania Railroads, alleging that each of the defendants wronged her in negligently causing her husband to suffer injuries which "have and will hereafter interfere with, diminish and destroy the normal society, companionship and consortium to which Plaintiff is entitled of right from her husband." The declaration alleges that plaintiff's husband was in-

jured when struck by a sliding door which fell outward from a boxcar owned by The Pennsylvania Railroad and in the possession and control of the Western Maryland Railway at the time of the accident. The defendant-appellees demurred on the ground that a wife in Maryland has no cause of action for loss of consortium claimed to result from personal injuries of her husband caused by the negligence of a third party. The court below sustained the demurrers without leave to amend. The plaintiff has appealed.

During the oral argument, it was stated on behalf of the appellees, without contradiction, that the husband of the appellant had sued the appellees in the United States District Court for the District of Maryland for injuries sustained by him in the accident which is the basis for the appellant's present action, and that his case had been settled before the institution of the appellant's suit.[1]

The loss of consortium, as used in the cases in Maryland and elsewhere, means the loss of society, affection, assistance and conjugal fellowship. It includes the loss or impairment of sexual relations. There is no question as to the present state of the common law in Maryland as to the separate rights of a husband and a wife to recover for loss of consortium due to the other's injury as a result of the negligence of a third person. The husband has the right. *Nicholson v. Blanchette,* 239 Md. 168, 210 A. 2d 732 (1965). The wife does not. *Coastal Tank Lines, Inc. v. Canoles,* 207 Md. 37, 113 A. 2d 82 (1955); *Emerson v. Taylor,* 133 Md. 192, 104 Atl. 538 (1918); and see *Nicholson,* at 239 Md. 185. In *Canoles,* the Court re-examined the doctrine set forth in *Emerson,* which denies the wife's right of recovery, and re-affirmed it, largely on the historical ground

---

1. The records of the Federal District Court show that on January 13, 1964, the appellant's husband, Charles L. Deems, filed suit in that court first against the Western Maryland Railway Company, later joining The Pennsylvania Railroad Company, for injuries sustained by him in the same accident on which the appellant bases her present claim. An order of settlement and satisfaction was filed in the federal case on November 17, 1965. U. S. District Court for Maryland, Civil No. 15217. The appellant filed her declaration in the case before us on December 13, 1965.

that the husband's right is based on the old common law concept that he has a proprietary interest in his wife's services, that his right has survived only as an anomaly and that the doctrine should not be extended to give a similar right to the wife. Judge Henderson, for the Court, considered the case of *Hitaffer v. Argonne Co.*, 183 F. 2d 811 (D. C. Cir.), *cert. denied*, 340 U. S. 852 (1950), which was the first decision giving the wife the right to recover for loss of her husband's consortium in a negligence case, but noted that at the time of the decision *Hitaffer* had not been followed by any court of last resort. Judge Henderson said that the doctrine of *stare decisis* was "peculiarly applicable" and that any prospective change was for the Legislature. In *Nicholson*, Judge Barnes, for the Court, re-affirmed *Canoles* although he noted that, since *Canoles, Hitaffer* had been followed in twelve states.

The appellant contends that the Maryland common law, as established by this Court, is invalid because, under the Equal Protection Clause, discrimination against women as such is unconstitutional. She argues, further, that the refusal to accord wives the same right their husbands have is invalid because the distinction is made by the courts, not by the Legislature, and therefore violates Article 8 of the Maryland Declaration of Rights which provides for the separation of the legislative and judicial functions.

The latter argument ignores a basic function of the judicial process. The consideration of the distinctions between one group of facts and another in deciding the application of legal rules, the classification of relationships in the light of principles of justice, history and the social welfare, the determination of rights and liabilities according to status and general circumstance — these are of the warp and woof of our judicial system. See Holmes, *The Common Law* 117, and Cardozo, J. in *Jacob & Youngs, Inc. v. Kent,* 230 N. Y. 239, 242-43, 129 N. E. 889, 891 (1921). It is judge-made law which decides the varying legal liability of an owner of land to persons upon his property according to whether they be invitees, licensees or trespassers, and the age below which infants cannot be charged with contributory negligence. These, and many other classifications, are made as a necessary part of the judicial function. The

making of such determinations violates no principle of the separation of powers, for traditionally and as an inherent part of our system of government their formulation is a necessary part of the judicial duty.

It has been held that the action of a state court is as subject to attack on the ground that it violates the Fourteenth Amendment as is the action of a state legislature. *Shelley v. Kraemer,* 334 U. S. 1, 17 (1948), and cases therein cited. It is also true that when this Court is asked to examine a legal doctrine which it has laid down in past decisions in the light of a constitutional claim not previously raised, our function is somewhat different than it is when the constitutionality of a statute is attacked. In the latter situation, there is the presumption of the validity of the legislative enactment. The action reviewed is that of a separate depository of the sovereign power. When a court must review its own decisions, the action is one of self-examination. A decision of a state appellate court remains the law unless and until it is overruled, not only because, on re-examination, it is generally believed to be correct by the court which made it, but because of the doctrine of *stare decisis.* However, *stare decisis* is a policy rather than a presumption. Under that policy, for reasons of certainty and stability, changes in decisional doctrine are left to the Legislature. But if a past decision is found to be violative of the federal constitution, the policy of *stare decisis* cannot save it. That policy entails the re-affirmation of a doctrine even though, if considered for the first time, the court might reach a different conclusion. When the attack upon the doctrine is based on federal constitutional grounds, the Court must consider the decisions afresh from the point of view, not of what is desirable as a matter of state law, but of the impingement of constitutional requirements.

In brief, the appellant argues that there is an invalid discrimination in according the right to the husband and denying it to the wife because husband and wife now have equal status in the law; that the Married Women's Act of 1898, Code (1957) Article 45, Section 5, expressly gave married women power to sue for torts committed against them; that discriminations against women as such are invalid; and that the discrimination

established by the Maryland decisions is unjustified by logic, modern social concepts, or the facts of life. The appellees answer that, under the decisions of the Supreme Court of the United States, sex is not necessarily an invalid basis for classification;[2] that the law gives the married woman many rights as wife which the married man does not have as husband; that the Married Women's Act relieved married women of legal disabilities but did not create new causes of action; that, while the anomaly of an action by the husband is entrenched in the law, there is no sound reason to extend the anomaly to parties not burdened by the obligation of support; and that there will be great danger of double recovery if the right were granted to the wife. Finally, it is argued that, if the wife should prevail in her constitutional argument, the rights of husband and wife should be equalized by the denial of the action to both.

Many of these arguments, pro and con, were considered by this Court in arriving at its conclusions in the cases dealing with loss of consortium as a common law right. As those decisions evidence, considerations of fairness and the balancing of interests may be as relevant in formulating a common law rule as in arriving at a constitutional decision. Nevertheless, the constitutional question was not raised in our prior adjudications, nor, apparently, had there then been decisions in other jurisdictions on the impact of the Equal Protection Clause.

Before considering the decisions on the constitutional question, we deem it appropriate to refer to recent developments in the common law as to the wife's right to sue for consortium. In *Igneri v. Cie. de Transports Oceaniques,* 323 F. 2d 257 (2d Cir. 1963), the court held that the maritime law gave the wife of a longshoreman no action for loss of consortium due to injuries to her husband resulting from negligence or unseaworthiness. The opinion was written by Judge Henry Friendly, one of the pre-eminent jurists of our time. Before reaching the maritime question, Judge Friendly exhaustively considered the common law authorities on the right to recover for loss of con-

---

2. E.g., Muller v. Oregon, 208 U. S. 412 (1908); Bosley v. McLaughlin, 236 U. S. 385 (1915); Radice v. New York, 264 U. S. 292 (1924); Goesaert v. Cleary, 335 U. S. 464 (1948); Hoyt v. Florida, 368 U. S. 57 (1961).

sortium in an action based on the negligence of a third party. He found that twelve jurisdictions recognized the right (one by statute), and nineteen refused to grant it. The great majority of legal commentators, he found (as did Judge Henderson in *Canoles*), argued for the right.[3]

---

3. Since Igneri, eighteen courts, fourteen state tribunals and four federal, have dealt with the wife's right to recover. Ten of these jurisdictions had dealt with the question before; nine of these jurisdictions affirmed their previous positions, four permitting recovery, Slovin v. Gauger, 193 A. 2d 452 (Del. Super. 1963); Wright v. Schebler Co., 37 F.R.D. 319 (S. D. Iowa 1965) (Iowa law) (dictum); Manning v. Jones, 349 F. 2d 992 (8th Cir. 1965) (Mo. law); Ross v. Cuthbert, 239 Ore. 429, 397 P. 2d 529 (1964) (applying Ore. Rev. Stats. § 108.010), and five denying it, Gallagher v. Pequot Spring Water Co., 2 Conn. Cir. 354, 199 A. 2d 172 (App. Div. 1963) (recovery denied to both husband and wife); Miller v. Sparks, 189 N. E. 2d 720 (Ind. App. 1963); Hoffman v. Dautel, 192 Kan. 406, 388 P. 2d 615 (1964); Baird v. Cincinnati, N. O. & Tex. Pac. Rr. Co., 368 S. W. 2d 172 (Ky. 1963); Wiseman v. Knaus, 24 A. D. 2d 869, 264 N. Y. S. 2d 331 (Sup. Ct. App. Div. 1965).

One jurisdiction, New Jersey, despite indications to the contrary in its decisions, held that a wife could recover for loss of consortium. Ekalo v. Constructive Service Corp., 46 N. J. 82, 215 A. 2d 1 (1965).

Of the eighteen jurisdictions which have considered the question since Igneri, eight did so apparently for the first time. Two of these allowed recovery. Owen v. Illinois Baking Corp., 260 F. Supp. 820 (W. D. Mich. 1966); Clem v. Brown, 207 N. E. 2d 398 (Ohio C. P. 1965). The other six denied recovery. Potter v. Schafter, 161 Me. 340, 211 A. 2d 891 (1965); State Farm Mut. Ins. Co. v. Village of Isle, 265 Minn. 360, 122 N. W. 2d 36 (1963); Roseberry v. Starkovich, 73 N. M. 211, 387 P. 2d 321 (1963); Rush v. Great American Ins. Co., 376 S. W. 2d 454 (Tenn. 1964), and Krohn v. Richardson-Merrell, Inc., 406 S. W. 2d 166 (Tenn. 1966), cert. denied, U. S. Sup. Ct., March 20, 1967; Baldwin v. State, 125 Vt. 317, 215 A. 2d 492 (1965), and Herbert v. Layman, 125 Vt. 481, 218 A. 2d 706 (1966); Carey v. Foster, 345 F. 2d 772 (4th Cir. 1965) (applying a Virginia statute, but see strong dictum in favor of recovery on basis of equal protection clause).

See also Prosser, Torts § 119 (3d ed. 1964), and the following recent law review commentaries favoring recovery by the wife: 26 Md. L. Rev. 361 (1966); 10 St. Louis U.L.J. 276 (1965); 10 S.D.L. Rev. 120 (1965); 5 Washburn L.J. 112 (1965); 18 West. Reserve L. Rev. 621 (1967).

Judge Friendly analyzed the arguments for and against the granting of the right and concluded: "With the common law authorities so conflicting and the opposing arguments so nearly in balance, we turn to * * * relevant elements of maritime law." 323 F. 2d at 265. These elements, he held, led to the conclusion that the wife's claim, in the case before the court, must be denied.

In *Igneri*, the constitutional question was not before the court. The comparatively few courts which have passed upon the wife's claim as a constitutional right under the Equal Protection Clause are divided in their decisions.

In *Owen v. Illinois Baking Corp.*, 260 F. Supp. 820 (W. D. Mich. 1966), a judgment was returned in favor of the plaintiff's husband for injuries received in an automobile collision between cars driven by the plaintiff's husband and an employee of the defendant. In a separate case, a judgment was returned in favor of the plaintiff for loss of consortium as a result of the accident. The defendant moved to set aside the judgment for the wife. The situs of the accident was in Indiana; under the laws of that state, there is no right of a wife to recover damages for loss of consortium, although that right is recognized as to a husband. The District Court denied the motion to set aside the judgment in favor of the wife on the ground that a federal question was presented and that the denial of the right to sue for loss of consortium when applied to a wife but not to a husband, was clearly a violation of the wife's constitutional right. The court said that "to draw such a distinction between a husband and wife is a classification which is unreasonable and impermissible," and a violation of the Equal Protection Clause of the Fourteenth Amendment, 260 F. Supp. at 822.

In *Carey v. Foster*, 345 F. 2d 772 (4th Cir. 1965), the question was whether in Virginia a wife may maintain an action for loss of consortium resulting from negligent injury of the husband. The court found it necessary to construe a Virginia statute to determine whether under it the husband has any right to recover for the loss of his wife's companionship and affection. In its consideration of the meaning of the statute, the court said that if it were construed as giving a husband the right to recover damages for his own use and enjoyment because of the

loss of his wife's affection and companionship resulting from injuries negligently inflicted upon her, then "equality in the federal courts could be achieved only by recognition that the wife, too, had the same right of action." 345 F. 2d at 773. The court construed the Virginia statue as denying to the husband any right to recover for the loss of his wife's consortium and held that under such construction considerations of equality required that the wife be allowed no recovery for the loss of her husband's consortium. The quoted statement as to the effect of equality in the federal courts may be regarded as dictum, although it evidently played a part in the court's construction of the statute.[4]

The highest courts of Tennessee and of West Virginia have held that the refusal to allow the wife recovery for the loss of her husband's consortium, although the husband is allowed the right to recover for the loss of the wife's consortium, does not constitute a denial of equal protection under the Fourteenth Amendment. *Krohn v. Richardson-Merrell, Inc.*, 406 S. W. 2d 166 (Tenn. 1966), *cert. denied,* U. S. Sup. Ct., March 20, 1967; *Seagraves v. Legg,* 147 W. Va. 331, 127 S. E. 2d 605 (1962). In *Krohn, supra,* the court said:

> "[I]t is our view that many and obvious differences between what, by legal logic, is recoverable by the male spouse for injury, on the one hand, and the female spouse on the other, may be conceived of. In short, under this view, the Tennessee rule with respect to recovery for loss of consortium does not work a 'discrimination' but no more than a practical and logical classification." 406 S. W. 2d 168-69.

We have referred to the necessity of re-examining our past decisions in the light of the constitutional question now raised. As a result of that re-examination, we find it unnecessary to decide whether the Equal Protection Clause compels a holding that the wife shall have a separate cause of action for loss

---

4. An Ohio nisi prius case, Clem v. Brown, 207 N. E. 2d 398 (Ohio C. P. 1965), granted the wife the right to bring the action, on constitutional grounds. We are constrained to regard that case as an exercise in polemics rather than a reasoned decision.

of her husband's consortium due to injuries sustained by him because of the negligence of a third party. In arriving at that determination, we have endeavored to re-evaluate the meaning of the long history behind our previous decisions in the light of present juridical concepts, to regard the realities of the connubial relationship, to consider what protection can properly be accorded to injury to that relationship within the practical limitations of effective legal action and to ascertain some rule which will be fair, in practice as well as in legal theory, to defendants as well as to plaintiffs.

We have asked ourselves what is the real reason for the almost universal criticism of the rationale of the common law rule under which a husband is entitled to be compensated for loss of his wife's consortium. Is not the criticism based on the reliance upon the discarded theory that the husband has proprietary rights in his wife, the out-worn fiction that he has a property interest in her services? The real objection to the rule, we believe, does not go to its postulate that, to some extent at least, an injury to the marriage relationship is a compensable wrong. That thrust of the old rule has not been attenuated by time but has become more potent. Even the wife was allowed to recover for wrongful interference with the marital entity for a direct interference by alienation of affections, until, as in Maryland, for practical reasons unrelated to legal principle, such actions were barred by statute. The present opprobrium in which the old rule is generally held is based on repugnance for the medieval concept that, during the marriage, the legal existence of the wife is suspended or incorporated into that of the husband. However, insofar as the rule embodies a right to recover for an injury to the marital entity, we believe that it is in accord with modern legal thought. To overrule the common-law doctrine and to deny the claim of the husband as well as that of the wife in order to attain equality of treatment between them, as a few courts have done,[5] it seems to us, is to throw out the baby with the bathwater.

---

5. See cases cited in Ekalo v. Constructive Service Corp., supra, note 3, 46 N. J. at 93, 215 A. 2d at 7. See also Carey v. Foster, 345 F. 2d 772 (4th Cir. 1965); Gallagher v. Pequot Spring Water Co., 2 Conn. Cir. 354, 199 A. 2d 172 (App. Div. 1963).

There is a basic and vital reality, which we believe is not sufficiently recognized by the decisions which either grant or deny the wife some right of recovery in the situation we are considering. Beyond and apart from the legal obligations of the husband to support his wife, to pay her alimony if he deserts her and other duties connected with a partial dissolution of the marriage ties, there is, in a continuing marital relationship, an inseparable mutuality of ties and obligations, of pleasures, affection and companionship, which makes that relationship a factual entity. That concept is at least partially recognized in the law. At common law and still today in many states, of which Maryland is one, husband and wife can hold property as tenants by the entirety and neither can dispose of any part of it without the assent of the other. In legal contemplation, each is possessed of the entire estate and is entitled to the whole "by reason of the legal unity of their existence." *McCubbin v. Stanford,* 85 Md. 378, 390, 37 Atl. 214 (1897); *Columbian Carbon Co. v. Kight,* 207 Md. 203, 114 A. 2d 28 (1955). We see no valid reason why that concept should not be extended to permit recovery for wrongs negligently caused to the legal unity through the physical injury of either spouse.

If the right to sue for loss of consortium is regarded as available only to the husband and wife jointly, there is no longer a question of unequal treatment of wife and husband by the courts. They are treated in legal contemplation as the partners they are in fact. The wife does not receive the separate right to sue, but she is accorded a new right to recover as part of the marital entity. As to the husband, the change is both a restriction and enlargement of his right as it has heretofore existed. He can no longer sue separately for loss of consortium, but, to the extent that any loss to the wife is embodied in the new cause of action, the joint suit represents a possible increase in the damages which may properly be recovered, even though the proceeds go to both spouses instead of to the husband alone.

That both spouses suffer when the marriage relationship is adversely affected by physical injury to either is a fact evidenced, if not by logic, by human experience since the institution of marriage became a basic part of our mores. If the husband is the one injured, it is not only the wife who is affected

by reason of any resultant change of the husband's personality or ability to engage in all the intangible associations which marriage brings; he too suffers the effect of the change, if only in reaction to his wife's unhappiness. Today, at least, it is unquestioned that the desire to have children and the pleasures of sexual intercourse are mutually shared. If the husband's potency is lost or impaired, it is both the man and woman who are affected. If the physical injury is to the wife, she sustains the same kind of loss in the marital relation as he does in the converse situation.

It is because these marital interests are in reality so interdependent, because injury to these interests is so essentially incapable of separate evaluation as to the husband and wife, that the conception of the joint action seems to us a fair and practical juridical development. It takes into account, we believe, the weighty criticism of the old law which restricts the right of recovery to the husband as well as the substantial arguments against creating a new and separate cause of action for the wife.

One of the arguments most frequently advanced against allowing the wife a separate right of action for loss of her husband's consortium is that such recognition would lead to a "double recovery". The husband, it is contended, may recover, not only for lost earnings (part of which presumably goes to support his wife) but also for lost or diminished ability to engage in sexual intercourse and for the value of his wife's nursing services. If the wife were permitted a separate recovery, she might presumably obtain a verdict which would encompass allowances for some of the same damages. There is much force in these arguments, but it is suggested that their implied converse is that but a single wrong has been sustained. If, in separate actions, the husband and wife would duplicate their damages, is not that duplication inherent in any separation of the actions? In any event, the danger of duplication, with its injustice to the defendant, would be overcome or at least be minimized, if the injury to the marital relationship were regarded as creating a single right of action, to which both husband and wife must be parties, and in which only a single, joint verdict would be allowed. The joint action for injury to the marriage

relationship would be tried at the same time as the action for personal injury and financial loss of the spouse claimed to have been physically hurt as a result of the defendant's negligence.

In *Igneri,* Judge Friendly said: "It is true that * * * this danger [of double recovery] would be minimized where, as in the present case, the husband and wife have joined their claims so that these may be tried to a single jury." 323 F. 2d at 264. He observed, however, that once the wife's cause of action was recognized, the courts would have no power to require such a joinder. *Igneri* was a case under the federal maritime law. No such restriction applies in Maryland.

In an exhaustive and cogent opinion after *Igneri,* the Supreme Court of New Jersey granted the wife the right to sue for loss of her husband's consortium because of injuries to him as a result of the defendant's negligent construction and maintenance of a gas line. *Ekalo v. Constructive Service Corp.,* 46 N. J. 82, 215 A. 2d 1 (1965). Justice Jacobs, who delivered the opinion for the court, pointed out that the husband's right to sue for loss of consortium due to injuries negligently inflicted upon his wife was fully established in New Jersey. He said, however, that earlier decisions intimating that the wife did not have a corresponding right were inconclusive and not controlling. He rested the decision on the reasoning of *Hitaffer* and the cases which have followed it. In his opinion, Justice Jacobs said:

> "The defendants urge that denial of the wife's consortium action would find sensible foundation in the fact that a jury will ordinarily consider the other spouse's loss of consortium and will allow 'a full and complete recovery for the family' in the main action by the spouse who suffered the accident. But if that be so, would it not be more just and more forthright for the law to recognize with equality the respective claims and compel their joinder in a single proceeding during which a jury could be fully and fairly instructed as to the nature and limits of the independent demands for recovery." 46 N. J. at 91, 215 A. 2d at 6.

The procedural limitations imposed in *Ekalo* are of impor-

tance in the modification of the law we are here considering. Justice Jacobs stated that it was conceded at oral argument that the action by the wife should be joined with the pending action by the husband so that both actions could be tried by a single jury or by a single judge if a jury be waived. He then said:

"One final item requires mention here. Many claims by husbands for physical injuries caused by alleged tortfeasors have heretofore been effectively barred by settlement, judgment or otherwise; in those particular instances it would be grossly unfair to permit the assertion, for the first time, of a consortium claim by the wife and nothing in our opinion is to be taken as having that effect. However, where the husband's claim has not been barred and an action on his behalf is actually pending, the wife's consortium claim, if not itself barred by limitations, may now be joined in the husband's action. In all future actions, the wife's consortium claim may be prosecuted only if joined with the husband's action." 46 N. J. at 95-96, 215 A. 2d at 8.

The requirement that the separate actions of the husband for his physical injuries and that of his wife, for loss of consortium, be joined for purposes of trial comes close to the concept that the cause of action for loss of consortium is only a joint one. It is less difficult for the trier of facts to award a joint verdict for the injury to the marital relationship, if the elements involved are properly defined, than it is to award separate damages for losses which, in some respects, are essentially indivisible. While we have found no decision which expressly considers the concept here advanced, several commentators have discussed it favorably.[6]

---

**6.** "The denial of protection to the relational interest against physical harms is due to the fear that to give protection would permit a double recovery for the same hurt, inasmuch as it is thought that the jury will take into consideration in giving damages to the spouse who suffered the personal injury his incapacity to perform his conjugal relation as a part of his loss. Doubtless

This Court has never had before it the precise question here considered. Our prior decisions have dealt only with the wife's claim to a separate cause of action for loss of consortium for injuries sustained by the negligence of a third person, which was denied, or the husband's claim for a corresponding separate right of action, which has been acknowledged. We have not previously had occasion to decide whether there should be a joint cause of action for injury to the marital relationship.

Of course, if such a joint cause of action be recognized, to that extent the wife will be accorded a right which she did not previously have and the husband's unrestricted right, previously acknowledged, will be curtailed in that he must institute a joint action with his wife. These are changes in the pre-existing law, but as a great legal scholar pointed out, while gen-

also it is hoped to serve the purposes of good administration by reducing the amount of litigation and compelling the whole matter to be included in one suit. There is nothing to indicate, however, that the courts would permit the spouse whose relational interest is injured to join in the suit of the spouse who seeks to recover for his personal injuries so as to give prominence to the relational interest involved. It would seem that if such interest is to be given any protection it would be preferable to recognize it expressly in some such manner, rather than to assume that the jury will necessarily take it into consideration in assessing the damages of the spouse who has suffered physical injury to his personality." Green, "Relational Interests", 29 Ill. L. Rev. 460, 466-67 (1934).

"Unless the action of the spouse directly injured is expanded to include the loss of consortium of the other, the one indirectly injured should have a cause of action, although perhaps it may be fair to require consolidation of the actions for trial, or to find a waiver under certain circumstances." Foster, "Relational Interests of the Family", 1962 Ill. L. Forum 493, 520. See also, Fridman, "Consortium as an 'Interest' in the Law of Torts", 32 Canadian Bar Rev. 1065, 1077-80 (1954); Note, 61 Colum. L. Rev. 1341, 1353, 1356 (1961); 29 N. C. L. Rev. 178, 183 (1951); 25 Tulane L. Rev. 293, 296 (1951); 5 Washburn L. J. 112, 123-25 (1965).

1 Harper & James, Law of Torts, 640 (1956), say that "to state that there is but one cause of action which is 'divided' between the wife and husband is not accurate since the nature of the husband's interest is different and distinct from the wife's." However, that criticism is not pertinent if the mutuality of the joint interest is properly limited and the husband retains the right to recover for his individual injuries.

erally there should be adherence to precedent, the social interest served by certainty must, on occasion, be balanced against the social interest served by equity and fairness, so that the court is enjoined with the duty "of drawing the line at another angle, of staking the path along new courses, of marking a new point of departure * * *." Cardozo, *The Nature of the Judicial Process* 113 (Yale Univ. Press 1955).

In the situation before us, there are weighty reasons for "drawing the line at another angle". In *Canoles,* Judge Henderson said, for the Court: "If the case were one of first impression, and the authorities were divided, arguments based on abstract theory and logical symmetry might have more weight." 207 Md. at 49. As Judge Barnes, for the Court, noted in *Nicholson,* the authorities since *Canoles* have become much divided, and the division continues. In the approach we take to the question, the case is one of first impression. On the applicability of *stare decisis,* Judge Henderson thought that the matter was peculiarly one for the Legislature, because only that body could make the change prospective. Since *Canoles,* we have held that a change of law effected by the Court, with limited exceptions, can be made prospectively. *Schowgurow v. State,* 240 Md. 121, 131-34, 213 A. 2d 475 (1965) ; *Schiller v. Lefkowitz,* 242 Md. 461, 219 A. 2d 378, *cert. denied,* 385 U. S. 947 (1966). The Supreme Court has gone even further in denying retroactive effect to a change in the law which it effected. *Johnson v. New Jersey,* 384 U. S. 719 (1966). Finally, a federal constitutional question is here involved. When the construction of a statute is before us, it is well established law that the enactment will be construed so as to avoid a conflict with the constitution whenever that course is reasonably possible. *Stevens v. City of Salisbury,* 240 Md. 556, 566, 214 A. 2d 775 (1965), and cases therein cited. The same principle is applicable in the situation now before us. The reasons for which we favor the adoption of the joint-right concept are based, we believe, on legal and social policy and a weighing of the interests involved. However, the avoidance of a possible conflict between the present law and the federal constitution is an additional reason for adopting now what we think is a sound solution, rather than to postpone the entire question for possible future legislative action.

Under the legal entity concept, arguments against changing the present law in addition to the "double recovery" objection disappear or become less forceful. Under the concept, there is not involved the possible right of other members of the injured person's family to recover for intangible losses, with possible inordinate expansion of a defendant's liability for damage resulting from his negligence; the right is confined to injury to the joint relational interest of the spouses. The reasoning of Lord Goddard, in *Best v. Samuel Fox & Co., Ltd.,* [1952] A. C. 716, quoted in *Canoles,* that the duty of an individual to use due care extends only to persons in the proximity of his acts, becomes inapplicable, for, under the legal entity theory, whether it be the husband or wife who is injured, the negligence of the defendant directly affects the entity through its member who sustains the physical injury. Once the rule is established, the possible loss to the absent member of the entity is a direct and expectable result of the negligence. See *Mahnke v. Moore,* 197 Md. 61, 69, 77 A. 2d 923 (1951) and Restatement, *Torts* § 905, Comments *e* and *f.*

When the suit of the physically injured spouse is tried with the joint action for injury to the marital relationship, the jury should be instructed in detail, where appropriate, as to the particular matters for which compensation is to be made to the physically injured spouse in his or her separate action, if there be a recovery, and the matters to be considered only in fixing the damages in the joint action. For example, if the husband is injured as a result of the defendant's negligence and his injuries include loss or diminution of sexual capacity, he is entitled to compensation therefor, but the amount of recovery for that element, if any, is to be fixed only after taking into consideration the amount awarded for the loss to the marital relationship by reason of such injury during the joint life expectancy of the husband and wife. The husband's right to recover for loss of earning power remains part of his own claim, and the wife's claim to support is not included in the joint action. These and other corollaries of the rule can be specifically worked out on a case to case basis, in the immemorial manner of the law's development. We believe that, on the whole, such questions as may arise will involve less practical difficulties than

inhere in the present rule under which only the husband's loss of consortium is recoverable, and that the question of reasonable compensation for injury to the marital relationship is one well within the reach of the experience and judgment of the men and women who constitute a jury.

For these reasons, we hold that, when either husband or wife claims loss of consortium by reason of physical injuries sustained by the other as the result of the alleged negligence of the defendant, that claim can only be asserted in a joint action for injury to the marital relationship. That action is to be tried at the same time as the individual action of the physically injured spouse. Nothing in this holding is intended, expressly or impliedly, to affect the damages awardable under Maryland's Wrongful Death Statutes or Workmen's Compensation Act. We do not decide the effect which any federal statute, such as the Federal Employers' Liability Act, may have in foreclosing any claim for consortium under the Maryland law in cases where such a statute is applicable.

The holding here made shall apply to all future and pending actions, except for claims by husbands or wives which, prior to the date of the filing of this opinion, have been effectively barred by settlement, judgment, the Statute of Limitations, or otherwise. As pointed out in *Ekalo,* it would be unfair if the holding attempted to affect rights of defendants which have so accrued. See also *Schiller v. Lefkowitz, supra,* at 242 Md. 475-76.[7]

Because of this limitation upon the application of our holding, the appellant in this case cannot prevail. She waited until after her husband's case for physical injuries had been settled before she instituted her action for loss of consortium. If she had instituted her action before the settlement of her husband's claim and that action were still pending, she and her husband, absent any question of limitations, would be entitled to file a joint action, in accordance with this opinion, for injury

---

7. Nothing in this opinion is to be construed as deciding the question of the right of a husband to pursue a pending action which he has brought for loss of consortium due to personal injuries to his wife when the joinder of the wife in such an action has been effectively barred by the Statute of Limitations or otherwise. That question is left for future determination if and when it arises.

to the marital relationship, to be tried with the husband's suit. Prior to *Schowgurow,* this Court had expressly held that the method of selecting jurors in accordance with the Maryland Constitution was valid. Because of decisions of the Supreme Court, *Schowgurow* reversed that ruling. Here, the right to bring a joint action had never been expressly passed upon by this Court. Instead of following that possible course, the appellant chose to wait and then to seek a reversal of the Court's prior direct decisions that a wife cannot bring a separate action for loss of consortium. This, of course, the appellant had the right to do, but she cannot now legally complain that she followed a course which events have proved unavailing. We do not reach the constitutional issue which she raises as to her own situation because of our holding that, had the right to file a joint action for injury to the marital relationship been timely raised, that right would have been recognized and no question of unequal treatment would have been involved.

*Judgment affirmed; costs to be paid by appellant.*