**GEICO, Appellant,**

v.

**Valentine FETISOFF, Appellee.**

**No. 91–7065.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 31, 1992.

Decided March 20, 1992.

Sanford A. Friedman, Washington, D.C. (Laurence T. Scott, was on the brief), for appellant.

Paul Terrence O'Grady, Washington, D.C., for appellee.

Before EDWARDS, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In March 1990, a personal injury action arising out of an automobile accident was brought against appellee Valentine Fetisoff. The GEICO insurance company ("GEICO"), which insured Fetisoff, subsequently initiated a declaratory judgment action in the District Court, seeking to obtain a determination of its liability under the insurance policy it had issued to Fetisoff. The issue dividing GEICO and Fetisoff was the proper interpretation of the policy's limitation of liability provision; GEICO contended that the so-called "each person" limitation was applicable to the underlying tort action, while Fetisoff believed that the higher "each occurrence" limitation applied.

The District Court held that the limitation of liability provision was ambiguous and therefore granted summary judgment to Fetisoff. *GEICO v. Fetisoff*, Civ. No. 90–2499, 1991 WL 35521 (D.D.C. Feb. 28, 1991), *reprinted in* Appendix ("App.") 100. Because we find that the provision is not ambiguous, and that its plain language is

in accord with GEICO's position in this litigation, we reverse the judgment of the District Court and remand with instructions that judgment be entered in favor of GEICO.

## I. BACKGROUND

The facts of this case are straightforward and undisputed. On November 13, 1988, Tamara Fetisoff was involved in an automobile accident in which the driver of another car, Linda Whitney, was injured. Linda Whitney and her husband, John, subsequently filed a personal injury action in the District Court against Tamara Fetisoff and her husband, Valentine, who owned the automobile that Mrs. Fetisoff had been driving. *Whitney v. Fetisoff*, Civ. No. 90-0708 (D.D.C. filed Mar. 27, 1990). Linda Whitney sought $750,000 for injuries sustained in the accident; John Whitney asserted a separate claim for loss of consortium, seeking damages of $250,000. The District Court had subject matter jurisdiction over the action because the Whitneys are citizens of the District of Columbia, while the Fetisoffs are citizens of Virginia. *See* 28 U.S.C. § 1332(a)(1), (d) (1988).

At the time of the accident, Valentine Fetisoff was insured by GEICO under a so-called "$100,000/$300,000" automobile liability insurance policy—that is, a policy providing $100,000 of coverage for "each person" who suffers bodily injury in an accident, up to a maximum of $300,000 for "each occurrence." *See* Family Combination Automobile Insurance Policy ("GEICO Policy"), *reprinted in* App. 9. As settlement negotiations in the underlying tort action progressed, a dispute developed between GEICO and the Fetisoffs regarding the meaning of the language contained in the limitation of liability provision of the GEICO policy. GEICO contended that because only one person—Linda Whitney—suffered physical injury in the accident, its total liability on the underlying claim was the "each person" limitation of $100,000. The Fetisoffs believed that because both

Linda and John Whitney had asserted claims against them, the higher "each occurrence" limitation was applicable.

On October 10, 1990, GEICO brought suit in the District Court against Valentine Fetisoff, seeking a declaratory judgment that its reading of the relevant policy language was correct. In its amended complaint, GEICO named Fetisoff and the Whitneys as defendants. Although the jurisdictional allegations in the amended complaint were unclear, the complaint appeared to assert that GEICO is a District of Columbia corporation; it went on to state, correctly, that the Whitneys also are citizens of the District. *See* Amended Complaint for Declaratory Judgment ¶¶ 2, 4, *reprinted in* App. 36. Notwithstanding the apparent lack of diversity between GEICO and the Whitneys, the amended complaint premised jurisdiction on diversity of citizenship.[1] *Id.* ¶¶ 5–6. None of the parties brought this apparent jurisdictional defect to the attention of the District Court.

A few days after the amended complaint was filed, both GEICO and Fetisoff moved for summary judgment. Both parties asserted that there were no material issues of fact in dispute, and each argued that its interpretation of the policy was correct as a matter of law. GEICO claimed that the relevant policy language plainly indicated that the $100,000 "each person" limitation encompassed both Linda Whitney's personal injury claim and John Whitney's loss of consortium claim; Fetisoff contended that the policy language was ambiguous and should be construed in his favor.

On February 28, 1991, the District Court issued a Memorandum and Order granting Fetisoff's motion for summary judgment. Applying District of Columbia law, the trial court concluded that the limitation of liability provision in the GEICO policy contained a "real ambiguity," although no precise ambiguity was identified. *GEICO*, slip op. at 7. Accordingly, relying upon the rule of

---

1. After pleading the amount in controversy as exceeding $50,000, the amended complaint cited to the federal question statute, 28 U.S.C. § 1331 (1988), instead of to the diversity statute, 28 U.S.C. § 1332, as the relevant jurisdictional provision. *See* Amended Complaint for Declaratory Judgment ¶ 5. This was apparently a typographical error.

*contra proferentem,* the District Court construed the provision against GEICO and held that the higher "each occurrence" coverage amount was available to satisfy the Whitneys' underlying claims. *Id.* at 2, 7. GEICO filed a timely appeal of the District Court's order.[2]

Shortly after the briefing of this appeal was completed, this court, *sua sponte,* issued an order which noted the jurisdictional problem created by the apparent lack of diversity between GEICO and the Whitneys, and directed the parties to be prepared to address the issue at oral argument. GEICO subsequently filed motion papers in this court in which it acknowledged that the requisite diversity of citizenship did not exist; the motion requested that we dismiss the Whitneys as parties to this case and permit GEICO to file a second amended complaint. Fetisoff opposed GEICO's motion in a submission filed on January 29, 1992.

At oral argument, counsel for GEICO unexpectedly withdrew the motion to dismiss the Whitneys, stating that upon investigation he had discovered that GEICO's corporate headquarters are in Maryland, and that GEICO is incorporated in that state as well. Counsel thus contended that GEICO is a Maryland citizen, and that therefore complete diversity exists between the parties. At our direction, GEICO sub-sequently submitted an affidavit attesting to the location of GEICO's headquarters and its state of incorporation. Fetisoff was afforded an opportunity to contest the statements attested to in GEICO's affidavit, but he chose not to do so.

Given Fetisoff's acquiescence in the facts presented in the GEICO affidavit, we are persuaded that the requisite diversity of citizenship exists in this case.[3] We therefore have jurisdiction to hear this appeal under 28 U.S.C. §§ 1291, 1332 (1988).[4]

## II. DISCUSSION

On appeal, GEICO argues that the language of the relevant policy provision is not ambiguous, and that under the plain language of the provision, the "each person" limitation controls GEICO's liability with respect to the underlying tort litigation. Fetisoff counters that the District Court properly found real ambiguity to exist in the policy language. We begin by considering which state's law applies in this case[5] and then proceed to address the substance of the parties' contentions. We conclude that under District of Columbia law, which governs this dispute, the limitation of liability provision is not ambiguous and the "each person" limitation applies to Mr. Whitney's loss of consortium claim.

2. While this appeal was pending, the underlying tort action was settled for $120,000. The settlement acknowledged that a dispute still existed between GEICO and Fetisoff regarding which party was responsible for the amount of the settlement in excess of the $100,000 that GEICO concededly was obligated to pay under the "each person" limitation.

3. *See District of Columbia ex rel. American Combustion, Inc. v. Transamerica Ins. Co.,* 797 F.2d 1041, 1044 (D.C.Cir.1986) (defective jurisdictional allegations may be amended pursuant to 28 U.S.C. § 1653 even on appeal, particularly when the amendments are uncontested).

4. Although we find that we have jurisdiction and proceed to the merits of this case, we do not mean to condone in any way the manner in which GEICO's counsel has pleaded this case · and handled the confusion regarding jurisdiction. The jurisdictional allegations in both the initial and amended complaints were patently insufficient under our decision in *American Combustion,.Inc.,* 797 F.2d at 1043–44; worse still, they were affirmatively misleading. So, too, were the motion papers filed by GEICO in response to this court's *sua sponte* order. Indeed, it was not until the day of oral argument that counsel for GEICO managed to "discover" the true location of his client's corporate headquarters and thereby put the jurisdictional problem to rest. Such advocacy falls far short of what is expected of the attorneys who practice before the court.

5. Because the choice of law issue was raised by this court in our *sua sponte* order and addressed by counsel for GEICO at oral argument, we examine the issue independently instead of deferring to the District Court's implicit choice of District of Columbia law. *Cf. BWX Elecs., Inc. v. Control Data Corp.,* 929 F.2d 707, 710 (D.C.Cir.1991) (applying same law as that applied by District Court where issue not raised on appeal and where there was no apparent error in District Court's choice).

## A. *Choice of Law*

The District Court, without making an explicit choice of law determination, applied District of Columbia law in addressing the merits of this case. Our independent examination of the choice of law question reveals no reason to disturb the District Court's implicit choice of District of Columbia law.

■ In diversity cases, a federal court must apply the choice of law rules of the jurisdiction in which it sits. *See, e.g., Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C.Cir.1985), *later proceeding*, 794 F.2d 710 (D.C.Cir.1986), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991 (1987). The District of Columbia follows a modified "interest analysis" approach to choice of law. Under this approach, the first step is to determine whether a "true conflict" exists—that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different. *See id.; Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C.1970). If there is a true conflict, the court must go on to determine which of the relevant jurisdictions has the "more substantial interest" in having its law applied to the case under review. *Eli Lilly & Co.*, 764 F.2d at 882.

■ The first step of the analysis is dispositive in this case. There are three potentially "interested" jurisdictions: the District of Columbia, where the Whitneys reside and where the automobile accident took place; Maryland, where GEICO is incorporated and has its principal place of business; and Virginia, where the Fetisoffs are domiciled. The law in each of these jurisdictions is the same with respect to the interpretation of insurance contracts—in all three, the plain meaning of the policy language controls, and any ambiguities are resolved in favor of the insured. *See Meade v. Prudential Ins. Co. of America,* 477 A.2d 726, 728 (D.C.1984); *Howell v. Harleysville Mut. Ins. Co.*, 305 Md. 435, 505 A.2d 109, 113 (1986); *Virginia Farm Bureau Mut. Ins. Co. v. Hodges*, 238 Va. 692, 385 S.E.2d 612, 614 (1989). Thus, there is no "true conflict" and we apply the law of the District of Columbia by default. *See Fowler*, 262 A.2d at 348; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 186 cmt. c (1971).

## B. *The Merits*

■ On the merits, the question presented is whether the District Court properly construed the limitation of liability provision in the GEICO policy. Because the District Court purported to base its holding on the express language of the policy (and not on any extrinsic evidence), we review this question *de novo*. *See Hershon v. Gibraltar Bldg. & Loan Ass'n*, 864 F.2d 848, 852 (D.C.Cir.1989); *Washington Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980).

■ Under District of Columbia law, "[c]lear and unambiguous language [in an insurance policy] should be construed according to its everyday meaning." *Continental Casualty Co. v. Cole*, 809 F.2d 891, 896 (D.C.Cir.1987). However, if the language of a policy is ambiguous—that is, reasonably susceptible to two different readings by an ordinary layperson—then it must be "construed in favor of the insured wherever reasonable." *Id.* at 895; *see also Meade*, 477 A.2d at 728 (same). At the same time, the courts "must ever guard against allowing sympathy for a party to produce a result contrary to the clear language of the contractual provisions ... even if done in the name of public policy." *Conesco Indus. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 315 (D.C.Cir.1980).

■ In this case, the disputed language in the insurance policy reads as follows:

**Limits of Liability:** The limit of bodily injury liability stated in the declarations as applicable to "each person" [$100,000] is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to "each occurrence" [$300,-000] is, subject to the above provision respecting each person, the total limit of

the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence.

GEICO Policy at 15. The question presented is whether John Whitney's claim for loss of consortium is encompassed by the phrase "all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person." If it is, then Mr. Whitney's claim is subject to the "each person" liability limit of $100,000 and GEICO prevails. On the other hand, if Mr. Whitney's claim is not plainly encompassed by the quoted language—that is, if the language is ambiguous—then the policy must be construed in Fetisoff's favor and the "each person" limit will not apply. Because there appears to be no District of Columbia case construing the precise policy language at issue, we must interpret the language ourselves, bearing in mind, where applicable, the rules of construction that obtain under local law.

Examining the plain language of the GEICO policy, we conclude that the limitation of liability provision is unambiguous, and that Mr. Whitney's loss of consortium claim is encompassed by the "each person" limitation. The provision states that "*all* damages, including damages for care and loss of services, *arising out of* bodily injury sustained by one person" are subject to the "each person" liability limit. Here, Mr. Whitney's claim clearly "arises out of" his wife's injury; Mr. Whitney would have no claim for loss of consortium under the insurance policy absent the injury suffered by Mrs. Whitney in an accident covered by the policy. As a result, Mr. Whitney's claim, like "all damages" stemming from Mrs. Whitney's injury, is subject to the "each person" limitation. Surely the word "all"—one of the least ambiguous in the English language—leaves no room for uncertainty as to the inclusion of Mr. Whitney's claim. And even if some doubt about the purview of the "each person" limitation did remain, it is removed by the dependent clause "including damages for care and loss of services," which plainly refers to consortium-type claims.

It is equally clear that Mr. Whitney's loss of consortium claim is *not* encompassed by the terms of the "each occurrence" limitation. The policy states that

the limit of … liability … applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence.

*Id.* Thus, the higher "each occurrence" limitation is triggered only when *two or more persons* sustain *bodily injury* in an accident.

In this case, Fetisoff concedes that only one person—Linda Whitney—suffered bodily injury in the automobile collision. Consequently, unless Mr. Whitney's claim for loss of consortium constitutes a separate "bodily injury," the "two or more persons" criterion is not met and the "each occurrence" limitation cannot apply. We conclude that loss of consortium is not a "bodily injury." The policy itself forecloses such a view by defining "bodily injury" as "bodily injury, sickness or disease, including death resulting therefrom," *id.* at 7; this definition plainly excludes consortium-type losses. Moreover, although there appears to be no District of Columbia case on point, courts in other jurisdictions have soundly rejected the notion that loss of consortium is a "bodily injury." *See, e.g., Montgomery v. Farmers Ins. Group,* 585 F.Supp. 618, 619 (S.D.Ind.1984) (Indiana law); *Arguello v. State Farm Mut. Auto. Ins. Co.,* 42 Colo.App. 372, 599 P.2d 266, 268–69 (1979); *Travelers Indem. Co. v. Cornelsen,* 272 Md. 48, 321 A.2d 149, 150–51 (1974); *Tomlinson v. Skolnik,* 44 Ohio St.3d 11, 540 N.E.2d 716, 719–20 (1989). Thus, even as the language of the policy plainly *includes* Mr. Whitney's loss of consortium claim within the "each person" limitation, it just as plainly *excludes* the claim from the purview of the "each occurrence" limitation.

Our conclusion that the "each person" limitation encompasses Mr. Whitney's claim is buttressed by the substantial case-law from other jurisdictions on this issue.

The clear majority of courts that have construed policy language identical or similar to that in the GEICO policy have concluded that damages for loss of consortium must be included within the "each person" limitation. *See, e.g., Wiltshire v. Virgin Islands,* 893 F.2d 629, 637 (3d Cir.1990); *Redcross v. Aetna Casualty & Sur. Co.,* 146 A.D.2d 125, 539 N.Y.S.2d 146, 146–47 (1989); *Whitney v. Nationwide Mut. Ins. Co.,* 151 Vt. 510, 562 A.2d 467, 468 (1989); Jane M. Draper, Annotation, *Consortium Claim Of Spouse, Parent Or Child Of Accident Victim As Within Extended "Per Accident" Coverage Rather Than "Per Person" Coverage Of Automobile Liability Policy,* 46 A.L.R.4th 735, 741–61 (1986) (collecting cases). *See generally* 8C JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 5097 (1981). Of particular significance is the view of the Maryland courts, since it is to Maryland law that the courts of this jurisdiction look for guidance when there is no controlling District of Columbia case.[6] In *Travelers Indem. Co.,* 321 A.2d at 150–51, the Maryland Court of Appeals interpreted policy language substantially identical to that in the GEICO policy. The court found the language of the policy to be unambiguous and held that the "each person" liability limitation applied to loss of consortium claims. *Id.*

Fetisoff advances three arguments in support of his contention that the "each person" limitation does not apply to Mr. Whitney's loss of consortium claim; but we find none of these arguments to be persuasive. First, Fetisoff points to the language in the policy providing that the "each person" limitation includes "all damages ... *arising out of* bodily injury sustained by one person." GEICO Policy at 15 (emphasis added). He argues that Mr. Whitney's loss of consortium claim cannot be deemed to "arise out of" Mrs. Whitney's injuries because District of Columbia law treats loss of consortium as an independent tort to the non-injured spouse and not as a derivative claim.[7] Although Fetisoff's characterization of District of Columbia law appears to be correct,[8] his argument regarding the meaning of the insurance policy is a non sequitur. As we noted in *Smither & Co. v. Coles,* 242 F.2d 220 (D.C.Cir.) (en banc), *cert. denied,* 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957),

> [w]hether the right of a spouse [to recover for loss of consortium] be regarded as independent, *i.e.,* arising directly from the tort, or as derivative, that right does not come into existence except for the occurrence of the injury. Absent a compensable injury to the one spouse there would be no claim [for loss of consortium].... In that sense certainly the "rights" are not independent of but *derive* from or are on account of a compensable injury to the [injured spouse].

*Id.* at 224–25 (emphasis in original) (applying D.C. law). Under the reasoning of *Smither & Co.,* Mr. Whitney's consortium claim plainly "arises out of" Mrs. Whitney's injuries even though his claim may be said to be legally independent of hers.

Next, Fetisoff contends that Mr. Whitney's claim is not subject to the "each person" limitation because GEICO normally pays loss of consortium claims under the

---

**6.** *See Hull v. Eaton Corp.,* 825 F.2d 448, 453–54 (D.C.Cir.1987) ("[W]hen there is no District of Columbia law on point we look to Maryland law for guidance."); *Walker v. Independence Fed. Sav. & Loan Ass'n,* 555 A.2d 1019, 1022 (D.C. 1989) (same).

**7.** We note that the law of consortium appears to be different in Maryland and Virginia than in the District of Columbia. *See Travelers Indem. Co.,* 321 A.2d at 150–51 (noting that, under Maryland law, loss of consortium is deemed an injury to the marital relationship and not an independent tort); *Carey v. Foster,* 345 F.2d 772, 776 (4th Cir.1965) (noting that Virginia does not recognize cause of action for loss of consor-

tium). However, no choice of law problem is presented because the law of consortium in Maryland and Virginia is *less favorable* to Fetisoff's "arising out of" argument than District of Columbia law. Thus, the law of the relevant jurisdictions is not "different," *see Eli Lilly & Co.,* 764 F.2d at 882, because the result reached is the same no matter which jurisdiction's view of consortium is applied.

**8.** *See Rollins v. District of Columbia,* 265 F.2d 347, 349 (D.C.Cir.1959) (holding that recovery for loss of consortium is "a right ... separate and apart" from right of injured spouse to receive compensation for personal injuries).

policy. This argument fails on its own terms; even assuming that loss of consortium claims are "covered" by the policy, that fact is simply irrelevant to the issue presented in this case. The question here is not what *kinds* of claims are covered by the policy, but rather what *limit of liability* applies to those claims that are asserted. As such, the fact that GEICO would pay Mr. Whitney's loss of consortium claim if Mrs. Whitney's personal injury claim had not exhausted the $100,000 "each person" limitation is in no way inconsistent with our conclusion that the "each person" limitation applies to both claims.

Finally, Fetisoff contends that the limitation of liability provision should be construed in his favor because it simply is not worded as clearly as it might be. To quote his very colorful brief:

> *Mid–Century Insurance Co. v. Bash*[9] ... dramatically illustrates how uncomplicated it is to draft a clear and unambiguous limitation of liability. The policy in question contained the simple seventeen (17) word declarative sentence, "Any claim for loss of consortium or injury to the relationship shall be included in this limit." Folks don't have to hire a phalanx of lawyers to figure out what that means. That apparently is what GEICO was trying to say in a hundred and two (102) word sentence replete with one independent and one dependent clause. We are almost willing to stand on the proposition that no sentence of more than a hundred words in an insurance policy is "clear and unambiguous." But that is not necessary [for Fetisoff to prevail].

Brief for Appellee at 4–5 (citation omitted). Indeed, the District Court seems to have had something like this in mind when it held that the policy contained a "real ambiguity." *See GEICO*, slip op. at 7 ("The burden must be on the insurance company to draft insurance policies in language that

ordinary individuals can understand.... Therefore, the Court finds that there is a real ambiguity in the limit of liability clause."). Under District of Columbia law, however, unartful drafting does not a "real ambiguity" make; if it did, then surely almost every contract would be vulnerable on *contra proferentem* grounds. Although the policy language at issue in this case arguably could have been drafted with greater precision, the fact remains that it is susceptible to only one reasonable interpretation—*i.e.*, it is not legally "ambiguous." Accordingly, we reverse the judgment of the District Court.

### III. CONCLUSION

For the reasons stated above, we hold that the limitation of liability provision in the GEICO Policy is not ambiguous. We further hold that under the plain language of the provision, John Whitney's loss of consortium claim is subject to the "each person" limitation. Accordingly, we reverse the judgment of the District Court and remand with instructions that judgment be entered in favor of GEICO.

*So Ordered.*

---

9.  211 Cal.App.3d 431, 259 Cal.Rptr. 382 (1989). It is interesting to note that the court in *Mid–Century Ins. Co.* relied upon *United Servs. Auto. Ass'n v. Warner*, 64 Cal.App.3d 957, 135 Cal. Rptr. 34 (1976). In that case, the California appellate court construed policy language iden-

tical to that at issue in the instant case and reached precisely the same result we do here. *See* 135 Cal.Rptr. at 36–38. Thus, far from supporting Fetisoff's argument, *Mid–Century Ins. Co.* actually undermines it.